IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

**BRADLEY S. MILLER,**          Case No. 5:16 CV 2399

    Plaintiff,              Judge John R. Adams

    v.                      Magistrate Judge James R. Knepp II

**COMMISSIONER OF SOCIAL SECURITY,**

    Defendant.              REPORT AND RECOMMENDATION

## INTRODUCTION

Plaintiff Bradley S. Miller ("Plaintiff") filed a complaint against the Commissioner of Social Security ("Commissioner"), seeking judicial review of the Commissioner's decision to deny supplemental security income benefits ("SSI"). (Doc. 1). The district court has jurisdiction under 42 U.S.C. §§ 1383(c) and 405(g). This matter has been referred to the undersigned for preparation of a report and recommendation pursuant to Local Rule 72.2(b)(1). (Non-document entry dated September 29, 2016). Both parties have filed Briefs on the Merits and Plaintiff filed a Reply. (Docs. 13, 16, 17). Following review, and for the reasons stated below, the undersigned recommends the decision of the Commissioner be affirmed.

## PROCEDURAL BACKGROUND

Plaintiff filed an application for SSI in September 2012, alleging disability as of May 2012. (Tr. 225).[1] The claims were denied initially and on reconsideration. (Tr. 127, 137). An administrative law judge ("ALJ") held a hearing in April 2015. (Tr. 27-62). Plaintiff (represented

---

1. Plaintiff previously applied for benefits in March 2010, alleging disability as of March 2008. (Tr. 73). An ALJ denied benefits in April 2011, (Tr. 73-83), and the Appeals Council affirmed (Tr. 115-20).

by counsel), a medical expert, and a vocational expert ("VE") testified at the hearing. (Tr. 28). Following the hearing, the ALJ issued an unfavorable decision. (Tr. 7-26). The Appeals Council denied Plaintiff's request for review, making the hearing decision the final decision of the Commissioner. (Tr. 1); 20 C.F.R. §§ 416.1455, 416.1481. Plaintiff filed the instant action on April 26, 2016. (Doc. 1).

**FACTUAL BACKGROUND**

Personal Background and Testimony

Plaintiff was born in January 1962, and was 53 years old on the day of the hearing. (Tr.33). He has a GED (Tr. 43) and no past relevant work (Tr. 18).

Plaintiff lives with his girlfriend. (Tr. 42-43). He has a driver's license but no longer drives due to concentration issues. (Tr. 43). He cleans his house, but "not very good". (Tr. 39-40). He does the dishes, but it hurts when he stands. (Tr. 40). He does his own laundry, but drags, rather than carries the laundry basket. *Id.* He could pick the laundry basket up and "could walk with it a little bit but it'd end up hurting[.]" *Id.* Plaintiff cooks simple things on the stove top and in the microwave. (Tr. 40-41). He does yard work, but it's getting "worse and worse every year." *Id.* Plaintiff mows the lawn with a "lawnmover that pulls itself and [he] pace[s] himself with it . . . . do[ing] a little bit and stop[ping]." *Id.* He can do about ten minutes before he has to sit. *Id.*

With regard to Plaintiff's physical pain, he states his feet hurt "really bad." (Tr. 33). He has a torn ligament in the bottom of his right arch and has pain that shoots down his right leg into his foot from his sciatica. (Tr. 33-34). Plaintiff broke his left foot in October 2012. (Tr. 34). Plaintiff's primary care physician, Charles Dhyanchand, M.D., referred him to podiatrist Dr. Grossman. (Tr. 38-39). He has seen Dr. Dhyanchand for "a few years". (Tr. 39).

Plaintiff can walk for a quarter of a mile before he has to stop. (Tr. 43-44). Plaintiff can stand for "five minutes [or] ten minutes", before it starts "driving [him] crazy." (Tr. 44). Plaintiff can sit for "a long time". *Id.* Plaintiff can lift "30 [to] 40 pounds" but only for an hour to an hour-and-a-half . *Id.* He could lift this amount a few times per day. (Tr. 47). If he had to lift five to ten times during the course of the day, he thought he could lift "[m]aybe five pounds." (Tr. 44). He later clarified, in response to questioning from his attorney, that he would not be able to lift five pounds frequently, but "[m]aybe off and on for an hour or something" because his back, hip, sciatica, and feet would bother him. (Tr. 48). If he were sitting in place, he could move five pounds around. (Tr. 58).

Relevant Medical Evidence[2]

Plaintiff saw Dr. Dhyanchand on February 6, 2012, to establish care for hip, leg, lower back, and arm pain. (Tr. 459). He reported lower back pain for more than five years with radiation of the pain. *Id.* He also reported a gunshot wound to his abdomen "years ago." *Id.* Dr. Dhyanchand assessed back pain and obesity, among other things. (Tr. 460). He prescribed medication and asked Plaintiff to follow up in four weeks. (Tr. 460-61).

In March 2012, Dr. Dhyanchand saw Plaintiff for fatigue, depression, and to review his back MRI. (Tr. 462). In April 2012, Plaintiff returned, complaining of (among other things), pain in his back and elbow aggravated by heavy lifting. (Tr. 465). Dr. Dhyanchand continued to assess back pain and prescribed pain medication. (Tr. 466). Plaintiff saw another provider in the same office, Ludmilla Malsen, M.D., in May 2012. (Tr. 468-75). In the musculoskeletal assessment, she

---

2. Plaintiff challenges the ALJ's analysis of the physical therapist's (and, he contends, Dr. Dhyanchand's) opinion regarding Plaintiff's physical impairments; as such, all other issues are waived. *See Young v. Sec'y of Health & Human Servs.*, 925 F.2d 146, 149 (6th Cir. 1990). Thus, for the sake of brevity, the factual background summarized herein will only include evidence related to his physical impairments.

noted generally no limitation in motion, no muscle or joint pain or weakness, and no back pain. (Tr. 468). She also noted "trace edema bilaterally", but no swelling or deformity, and normal range of motion in all joints. (Tr. 470).

Plaintiff presented at McMillen Chiropractic and Rehabilitation Center on October 9, 2012, for lower back pain. (Tr. 983-86). The chiropractor noted Plaintiff had left lower back pain with no specific etiology or date (but also noted Plaintiff "was beat up in prison years ago"). (Tr. 983). He also found decreased range of motion of the left SI joint and muscle tightness. *Id.* He performed a spinal manipulation to restore normal range of motion of the left sacroiliac joints. *Id.* The chiropractor noted Plaintiff's condition was "straightforward", "prognosis is good", and, "with treatment, the [Plaintiff] will be capable of employment as it relates to his [lower back pain]." (Tr. 984). He also noted Plaintiff "did not continue care in our office after his initial exam." *Id.*

Also in October 2012, Plaintiff saw Dr. Dhyanchand for follow up of a broken foot. (Tr. 478-81). He reported fracturing his foot on August 28, but was "unsure of the details." *Id*. He had a follow-up appointment scheduled with an orthopedic physician in two weeks. *Id.* A November 16, 2012 x-ray showed "well healing fractures of the left 5th metatarsal and left 4th proximal phalanx of the left foot." (Tr. 1076). A doctor's note indicated Plaintiff could "weightbear as tolerated in his normal shoe" and "progress as tolerated" with his activity. *Id.*

In December 2012, he visited the Orthopedic Clinic reporting he had felt a "snap in the plantar aspect of his right foot" and had developed a nodule in that location. (Tr. 1075). Matthew Kay, M.D., assessed a "[r]ight partial plantal fascial rupture" and gave Plaintiff a walking boot. *Id.*

Plaintiff again saw Dr. Dhyanchand in December 2012 complaining of bilateral hip, buttock, lower back, and foot pain. (Tr. 1064). Dr. Dhyanchand prescribed pain medication, and referred Plaintiff to a chiropractor for his back pain. (Tr. 1065).

In February 2013, Plaintiff went to the emergency room with right knee and low back pain "after being involved in a scat accident 2 days ago." (Tr. 1112). On examination, Plaintiff had right knee tenderness and tenderness "both spinally and paraspinally in the low lumbar spine", though he had "been ambulatory in the department." *Id.* He was diagnosed with low back pain and right knee pain. *Id.*

Also in February 2013, Plaintiff saw Dr. Richard Hofacker, a podiatrist. (Tr. 1091). He described his previous broken foot as well as spine and foot problems. *Id.* Dr. Hofacker ordered x-rays of Plaintiff's left foot. *Id.* Plaintiff saw Dr. Hofacker again in July 2013 for left foot pain (stating he could "barely walk" on the left foot) and Dr. Hofacker ordered an MRI. (Tr. 1092). Plaintiff underwent the MRI on July 10, 2013. (Tr. 1153-54). It showed "[a]n oblique facture of the distal fifth metatarsal extend[ing] from the mid to distal diaphysis through the metatarsal head at which there is granulation tissue, mild marrow edema, and marrow resorption" and "[m]oderate metatarsus varus-hallux valgus with a small medial bunion." (Tr. 1154).

Plaintiff saw Dr. Dhyanchand eight times between August 2013 and April 2015 for various problems. *See* Tr. 1170 (August 2013 visit for diabetes); Tr. 1306 (October 2013 visit for anxiety, foot numbness, and hand/foot swelling); Tr. 1303-05 (November 2013 visit for borderline diabetes, sleep apnea, and fibromyalgia); Tr. 1300-02 (November 2013 visit for x-ray results of foot/hip, and medication refills); Tr. 1297-99 (June 2014 visit for medication refills and depression); Tr. 1294-96 (September 2014 visit for a follow up and to request an inhaler); Tr. 1293-94 (January 2015 visit for a wart); Tr. 1287-91 (April 2015 visit for foot pain and requesting order for functional capacity exam for SSI). At each of these visits, Dr. Dhyanchand noted (among other things), in the "Medical History" section of his notes: "[s]ciatic nerve problems in leg". (Tr. 1287, 1294, 1297, 1300, 1303, 1306).

In July 2014, Plaintiff underwent a CT scan of his cervical spine due to neck pain. (Tr. 1313-14). It showed "[m]oderate degenerative spondylosis with disc space narrowing at C5-C6 and C6-C7 levels, more prominent at C6-C7" and a "[s]traightened cervical lordosis suggestive of muscle spasm." (Tr. 1313). It was negative for fracture or subluxation. (Tr. 1314).

Orthopedic surgeon, Ali Bagheri, M.D., examined Plaintiff on June 2, 2015, due to low back pain and right lower extremity pain. (Tr. 1320-21). Plaintiff reported "he has had physical therapy in the past, which he states significantly helped his low back pain and his leg pain." (Tr. 1320). On examination, Dr. Bagheri found Plaintiff's cervical and lumbar spine had no tenderness to palpation and normal range of motion. (Tr. 1321). Dr. Bagheri stated Plaintiff "would like to move forward with physical therapy, which is reasonable." *Id.* He also noted:

> With respect to his symptoms, should they worsen in nature, surgical options could be considered; however, he would have to quit smoking in order to pursue surgical intervention given that he would need a fusion. In any event, he is happy moving forward with anti-inflammatories, in addition to physical therapy. I will see him back in three to four months for repeat evaluation. He is happy with this plan moving forward.

*Id.*

Two days later, on June 4, 2015, physical therapist Jamie Leister performed a Functional Capacity Evaluation ("FCE") of Plaintiff. (Tr. 1323-32). The physical therapist noted Plaintiff performed consistently with his physical impairments and referred diagnoses. (Tr. 1324). He exhibited and reported low back pain with any weight bearing activity. *Id.* (His "primary report of pain was of low back pain with any weight bearing activity."). Plaintiff had "decreased trunk strength and endurance which limited his standing and lifting abilities." *Id.* In response to the request to describe Plaintiff's "Quality of Movement", Mr. Leister responded, in part, "[Plaintiff's] gait worsened with time and became more antalgic." (Tr. 1324). When prompted to indicate

6

Plaintiff's "Cooperation and Effort", Mr. Leister indicated: "[Plaintiff] had functional leg weakness which limited his low level activities". *Id.*

The physical therapist concluded Plaintiff: 1) could lift/carry 10-20 pounds occasionally, but never more; 2) could occasionally bend, squat, and climb, but never crawl; 3) could frequently reach above, reach waist, engage in simple grasping, pushing and pulling, fine manipulation, and foot controls, and occasionally reach below; and 4) was totally restricted from activities involving unprotected heights, but was not restricted from being around moving machinery or driving automotive equipment. (Tr. 1332). Further, the physical therapist opined Plaintiff could sit for a total of seven hours per workday (30 minutes continuously) and stand for two hours per workday (10 minutes continuously). *Id.* Thus, she concluded, Plaintiff would be "able to safely work in the sedentary demand level" if he could "control his symptoms [low back pain with sitting] with at will sit/stand/walk." *Id.*; *see also* Tr. 1332 (noting sit/stand at will opinion).

The following questions on the FCE were left blank: 1) "Onset of Current Disability"; 2) "Have you examined the patient often enough to obtain a view over time of the patient's medical conditions, abilities, and limitations, to a reasonable degree of medical certainty?"; 3) "Are your conclusions of the patient's conditions and limitations based on your examinations, patient's response to treatment, and results of testing or examinations you have ordered?"; (4) "If not, will the above conditions and disability last in excess of 12 months?"; and 5) "On average, how many days will the patient be absent from work each month due to his/her conditions?" *Id.*

Four days after the FCE, Dr. Dhyanchand added his signature and the notation "reviewed 6/8/15". (Tr. 1332).

7

VE Testimony, Medical Expert Testimony, and ALJ Decision

A VE testified at the ALJ hearing. (Tr. 55-61). The ALJ first asked the VE to consider a hypothetical individual with Plaintiff's age, education, and vocational background who could:

> lift 10 to 20 pounds, lift and carry 10 to 20 pounds frequently, but up to 30 pounds occasionally, they can sit six hours during the course of an eight-hour day with normal breaks, and they can stand and/or walk four hours each during the course of an eight-hour day, one hour at a time. This individual should never climb ladders, ropes, or scaffolds and occasionally climb stairs and ramps, balance, stoop, kneel, crouch, and crawl. This individual should avoid concentrated exposure to fumes, odors, gases and poorly ventilated areas. Additionally, this individual has mental impairments but can understand, remember, and carry out simple routine tasks that could be learned in 30 days or less. I'd like the environment to be relatively static with only occasional changes. I'd like this to be low stress work, which I'm going to define as precluding tasks that involve high production quotas such as piecework or assembly line work, strict time requirements, arbitration, negotiation, confrontation, directing the work of others, or being responsible for the safety of others. Lastly, I'd like this individual to have superficial interaction with co-workers and the public.

(Tr. 56-57). The VE testified such an individual could work as a marker, a hand packager, and a router. (Tr. 57-58). The ALJ then asked the VE to again consider the first hypothetical, but added the limitations of: 1) being absent two or more days per month; 2) being on task no more than 80 percent of the workday; and 3) requiring an extra break of 30 minutes in the morning and afternoon. (Tr. 58-59). The VE stated there would not be any jobs in the national economy if any of these conditions were added to the hypothetical. *Id.*

Medical Expert Arthur Brovender also testified at the hearing. (Tr. 48-55). He opined Plaintiff could sit for six to eight hours with normal breaks, stand or walk for four hours (one hour at a time), and lift and carry 10 to 20 pounds frequently, and up to 30 pounds occasionally (among other limitations). (Tr. 52).

In her written decision, the ALJ concluded Plaintiff had not engaged in substantial gainful activity since his alleged onset date, and had severe impairments of:

8

> antisocial personality disorder; adjustment disorder, NOS; major depression disorder/depression, NOS; posttraumatic stress disorder (PTSD); mood disorder, NOS; bipolar disorder; anxiety disorder, NOS; alcohol dependence/polysubstance dependence in remission; lumbar degenerative disc disease/ L5-S1 spondylolisthesis/ sciatica; cervical spondylosis; obstructive sleep disorder; periodic limb movement; right partial plantar fascial rupture; chronic obstructive pulmonary disease (COPD); and obesity (20 CFR 416.920(c)).

(Tr. 12-13). She concluded these impairments did not meet or equal the listings, Tr. 13-14, and Plaintiff retained the residual functional capacity ("RFC") to perform:

> light work as defined in 20 CFR 416.967(b) except he can frequently lift and carry 10-20 pounds and occasionally lift and carry 30 pounds. He can sit 6 hours and stand and/or walk 4 hours in an 8-hour day for up to one hour at a time. He should never climb ladders, ropes or scaffolds, and he can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, or crawl. He must avoid concentrated exposure to fumes, odors, dust, gases, and poorly ventilated areas. He can understand, remember, and carry out simple, routine tasks that can be learned in 30 days or less; the environment is relatively static which is defined as only occasionally changes and the work must be low-stress, which is defined as precluding tasks that involve high production quotas (such as piece work or assembly line work), strict time requirements, arbitration, negotiation, confrontation, directing the work of others, or being responsible for the safety of others. He is restricted to superficial interaction with co-workers and the public.

(Tr. 15). Based on the VE's testimony, the ALJ concluded Plaintiff could perform jobs in the national economy and, therefore, was not disabled. (Tr. 19).

### STANDARD OF REVIEW

In reviewing the denial of Social Security benefits, the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992). The Commissioner's findings "as to any fact

if supported by substantial evidence shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citing 42 U.S.C. § 405(g)). Even if substantial evidence or indeed a preponderance of the evidence supports a claimant's position, the Court cannot overturn "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003).

**STANDARD FOR DISABILITY**

Eligibility for benefits is predicated on the existence of a disability. 42 U.S.C. §§ 423(a), 1382(a). "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R § 416.905(a); *see also* 42 U.S.C. § 1382c(a)(3)(A). The Commissioner follows a five-step evaluation process – found at 20 C.F.R. § 404.1520 – to determine if a claimant is disabled:

1. Was claimant engaged in a substantial gainful activity?

2. Did claimant have a medically determinable impairment, or a combination of impairments, that is "severe," which is defined as one which substantially limits an individual's ability to perform basic work activities?

3. Does the severe impairment meet one of the listed impairments?

4. What is claimant's RFC and can claimant perform past relevant work?

5. Can claimant do any other work considering his RFC, age, education, and work experience?

Under this five-step sequential analysis, the claimant has the burden of proof in Steps One through Four. *Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at Step Five to establish whether the claimant has the RFC to perform available work in the national economy. *Id*. The ALJ considers the claimant's RFC, age, education, and past work experience to determine if

10

the claimant could perform other work. *Id*. Only if a claimant satisfies each element of the analysis, including inability to do other work, and meets the duration requirements, is he determined to be disabled. 20 C.F.R. §§ 404.1520(b)-(f); *see also Walters*, 127 F.3d at 529.

## DISCUSSION

Plaintiff's sole argument is that the ALJ erred by failing to give controlling weight to a Functional Capacity Evaluation ("FCE") filled out by physical therapist Jamie Leister—and later signed by Dr. Dhyanchand—pursuant to the treating physician rule. Specifically, Plaintiff argues Dr. Dhyanchand's signature converts the FCE to a treating physician opinion that is entitled to controlling weight.[3] The Commissioner responds that: 1) the opinion is not entitled to treating physician deference, and 2) even if it were, the ALJ provided good reasons for not adopting that opinion.

Generally, the medical opinions of treating physicians are afforded greater deference than those of non-treating physicians. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007); *see also* SSR 96-2p, 1996 WL 374188. This is so "[b]ecause treating physicians are 'the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained

---

3. In his reply brief, Plaintiff attempts to recharacterize the FCE as "objective evidence" that helped to "create[] an opinion by Dr. Dhyanchand that should have been given greater weight." (Doc. 17, at 1); *see also* Doc. 17, at 3 ("Dr. Dhyanchand reviewed the objective test and with his knowledge of Plaintiff's treatment history, he accepted or adopted the test results to create a treating physician opinion."). The undersigned finds this to be an unpersuasive distinction. Characterized either way, Plaintiff is ultimately arguing the ALJ failed to give appropriate weight to an opinion of Dr. Dhyanchand, and as discussed below, the undersigned finds no error.

11

from the objective medical findings alone[.]'" *Rogers*, 486 F.3d at 242 (quoting 20 C.F.R. § 416.927(d)(2)).

Courts have found that medical source opinions completed by non-treating physicians, but later endorsed by a treating physician are typically not considered treating source opinions, unless there is evidence that "the statement presented to the ALJ represented the opinions of a team effort". *Borden v. Comm'r of Soc. Sec. Admin.*, 2014 WL 7335176, at *15, n. 2 (N.D. Ohio) (citing *Ceballos v. Astrue*, 2009 WL 2475472, at *7-9 (D. Kan.)); *see also, e.g., Castro v. Barnhart*, 119 F. App'x 840, 843 (8th Cir. 2005) (finding a treating physician's agreement with a physical therapist's conclusions did not warrant controlling weight where the treating physician did not conduct an independent examination or see the patient in two years); *Arthur v. Colvin*, 2017 WL 784563, *12 (N.D. Ohio) (finding treating source deference not due to functional capacity evaluation completed by physical therapist where there was a notation showing that a treating physician "merely *reviewed* the evaluation") (emphasis in original); *cf. Pyotsia v. Astrue*, 2013 WL 101932, at *7 (N.D. Ohio) ("The Court does not decide whether [the other source] opinion is converted into a treating physician's opinion by [the treating physician's] stated *agreement*.") (emphasis added).

On June 4, 2015, physical therapist Jamie Leister evaluated Plaintiff and filled out the FCE. (Tr. 1323-32). On June 8, 2015, Dr. Dhyanchand added his signature, the date, and the notation "reviewed." (Tr. 1332). The ALJ addressed the FCE twice. First, she explained:

> The claimant's primary care physician, Dr. Dhyanchand signed the Functional Capacity Evaluation, which notes weakness in the lower extremities and antalgic gait (B31F). However, records note neurological exam is intact, with normal motor and sensation and normal range of motion (see i.e., B16F/11; B26F/2, 4, 7, 10, 13, 15; B29F/ 10, 13, 15, 19, 22). For this reason as well as the other inconsistent evidence in the record this opinion is given little weight. Emergency room notes indicate the back is nontender, gait and station are normal, and muscle strength is normal (B27F/18, 38; B29F/29, 30). On examination on June 2, 2015, he had no

> tenderness to palpation of the cervical or lumbar spine. He had normal active and passive range of motion of the lumbar and cervical spine. Strength and sensation were intact throughout (B30F/3). In June 2015, he restarted physical therapy and continued use of anti-inflammatories (B30F/3).

(Tr. 17). Later, she noted:

> The Functional Capacity evaluation at B31F, indicating a limitation to sedentary work with an option to sit/stand/walk at will, is given limited weight. His range of motion was entirely within functional limits, although he did have core and leg weakness and decreased grip strength. However, the evidence as a whole, particularly his conservative treatment and normal examination findings, does not support such severe limitations. While he did have a recent evaluation by an orthopedic surgeon in June 2015, his examination was normal, and the claimant was "happy" to continue with anti-inflammatories and starting physical therapy, specifically water therapy. He stated that physical therapy has helped significantly in the past (B30F). This is consistent with prior chiropractic records at B13F indicate that, with treatment, the claimant will be capable of employment as it relates to back pain (B13F/2).

(Tr. 18).

At the outset, the undersigned notes that Plaintiff points to no evidence, and the Court finds none, that Dr. Dhyanchand's signature on the FCE is the result of a team effort between him and Mr. Leister. First, Mr. Leister and Dr. Dhyanchand work at different facilities—Mr. Leister works at WorkWell Systems, Inc. whereas Dr. Dhyanchand works at Akron Community Health Resources. *See* Tr. 1064, 1323. Second, contrary to Plaintiff's assertion that Dr. Dhyanchand "adopted" the FCE (Doc. 13, at 8, 12), indicated above his signature is the word "reviewed", not "adopted". (Tr. 1332); *see Arthur*, 2017 WL 784563, *12 (treating source deference not due to functional capacity evaluation completed by physical therapist where there a notation indicated a treating physician "merely *reviewed* the evaluation") (emphasis in original). Third, had Dr. Dhyanchand's signature been the result of a "team" effort, presumably he could have completed the questions specifically pertaining to a treating physician (i.e., "Onset of Current Disability" and "Have you examined the patient often enough to obtain a view over time of the patient's medical

13

conditions, abilities, and limitations, to a reasonable degree or medical certainty?") blank. (Tr. 1332). Based on the above, the undersigned concludes the opinion was not entitled to treating physician deference, but rather is an opinion of an "other source". *See Sisky v. Colvin*, 2016 WL 4418104, at *8 (N.D. Ohio) (noting physical therapists do not constitute "acceptable medical sources" but, rather, qualify as an "other source") (citing, *inter alia*, *Nierzwick v. Comm'r of Soc. Sec.*, 7 F. App'x 358, 363 (6th Cir. 2001)).

"An ALJ must consider other-source opinions and 'generally should explain the weight given to these "other sources[.]"'" *Hill v. Comm'r of Soc. Sec.*, 560 F. App'x 547, 550 (6th Cir. 2014) (quoting SSR 06-03p, 2006 WL 2329939, at *6). However, "other-source opinions are not entitled to any special deference." *Id.* Here, the ALJ appropriately considered the physical therapist's opinion and generally explained the weight given to the opinion. The ALJ stated she gave the evaluation "little weight" because she found the limitations in the FCE inconsistent with the evidence of record. (Tr. 17). For example, she noted the physical therapist's opinion that Plaintiff has weakness in the lower extremities and an abnormal gait was inconsistent with: 1) Plaintiff's records which note an intact neurological exam, normal range of motion, and normal motor and sensation; 2) emergency room notes indicating a normal gait, station, and muscle strength; and 3) examination notes revealing no tenderness and normal active and passive range of motion of the cervical or lumbar spine. *Id.* (citing Tr. 1074, 1158, 1160, 1163, 1166, 1169, 1171, 1211, 1298, 1301, 1304, 1307, 1314-15, 1320). Further, she noted Plaintiff continues to use anti-inflammatories and physical therapy. *Id.* (citing Tr. 1320). Thus, the ALJ properly considered the physical therapist's opinion as an "other source" and complied with the relevant requirement that she "generally explain" her reasons for giving it "little weight".

Moreover, even assuming *arguendo* that Dr. Dhyanchand's signature converted the FCE into a treating source opinion, the ALJ provided sufficient good reasons for declining to give full weight to that opinion and her decision is supported by substantial evidence.

A treating physician's opinion is given "controlling weight" if it is supported by "medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the case record." *Id*. If the ALJ does not afford a treating source opinion "controlling weight," she must give "good reasons" why she refused to do so. *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 377 (6th Cir. 2013). "Good reasons" are reasons "sufficiently specific to make clear to any subsequent reviewer the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Rogers*, 486 F.3d at 242 (quoting SSR 96-2p, 1996 WL 374188, at *4). These reasons serve a second purpose, and that is to provide Plaintiff with an explanation for the ALJ's reasoning for a finding of not disabled. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).

"If the ALJ does not accord the opinion of the treating source controlling weight, it must apply certain factors" to assign weight to the opinion. *Rabbers v. Comm'r of Soc. Sec. Admin.*, 582 F.3d 647, 660 (6th Cir. 2009) (citing 20 C.F.R. § 404.1527(d)(2)). These factors include the length of the treatment relationship, the frequency of examination, the nature and extent of the treatment relationship, the supportability of the opinion, the consistency of the opinion with the record as a whole, and the specialization of the treating source. *Id*. Even so, an ALJ is not required to enter into an "exhaustive factor-by-factor analysis" to satisfy the "good reasons" requirement. *Francis v. Comm'r of Soc. Sec. Admin.*, 414 F. App'x 802, 804-05 (6th Cir. 2011). The Sixth Circuit has held that an ALJ may also give "good reasons" by challenging the supportability and consistency of the treating physician's opinion in an "indirect but clear way", *Brock v. Comm'r of Soc. Sec.*,

368 F. App'x 622, 625 (6th Cir. 2010), or "implicitly provid[ing] sufficient reasons for not giving those opinions controlling weight, and indeed for giving them little to no weight overall", *Nelson v. Comm'r of Soc. Sec.*, 195 F. App'x 462, 472 (6th Cir. 2006). Addressing an opinion's supportability and consistency with the record as a whole is sufficient. *See Henke v. Astrue*, 498 F. App'x 636, 640, n.3 (7th Cir. 2012); *Benneman v. Comm'r of Soc. Sec.*, 2012 WL 5384974, at *1 (N.D. Ohio).

Here, the ALJ explained he gave the FCE "little weight" or "limited weight" because it was inconsistent with and unsupported by other record evidence, namely: 1) Plaintiff had normal neurological findings; 2) Plaintiff had full range of motion; 3) emergency room notes that Plaintiff's back was non-tender, gait and station were normal, and muscle strength was normal; 4) a normal examination in June 2015; and 5) overall conservative treatment. *See* Tr. 17-18.

The ALJ first cited records showing "neurological exam is intact, with normal motor and sensation and normal range of motion." (Tr. 17) (citing Tr. 1074 (May 2012 note that Plaintiff has no limitation in motion, no muscle weakness or pain, and no back pain, as well as no neurological symptoms); 1158, 1163, 1166 (March, May, and June 2013 notes indicating neurological examination normal, L-S spines "unremarkable", and joints demonstration "apparent normal usage/shape"); 1169, 1171, 1295, 1298, 1301, 1304, 1307 (July 2013, October 2013, September 2013, November 2013, June 2014, and September 2014 notes indicating extremities normal with "motor, sensory and pulses X 4, no clubbing, cyanosis, edema, or erythema")). Plaintiff contends this is not a good reason because "[t]he ALJ failed to explain how normal neurological and sensational reports are relevant. Plaintiff's conditions are arthritic, none of them are neurological." (Doc. 13, at 11). The Commissioner responds that normal neurological and sensation reports are relevant to assessing the ability to stand and walk. (Doc. 16, at 9). The ALJ reasonably pointed to

these records in response to the FCE's findings of lower extremity weakness and antalgic gait. (Tr. 17). Additionally, range of motion is relevant to a person's ability to stand and walk.[4]

Next, the ALJ pointed to Plaintiff's emergency room visits in April and May 2014 (for other issues) wherein Plaintiff's gait and station were normal, muscle tone and strength were normal (Tr. 1211), and his back was non-tender (Tr. 1315). Additionally, the ALJ pointed to Plaintiff's June 2015 examination by orthopedic surgeon Dr. Bagheri, in which Dr. Bagheri noted Plaintiff had no tenderness to palpation of the cervical or lumbar spine, normal range of motion in the spine, and strength and sensation were intact. (Tr. 17) (citing Tr. 1321). These records contradicted the FCE's conclusion that Plaintiff was significantly limited by his lower back pain. Dr. Bagheri's findings are particularly relevant as they were recorded just two days prior to the FCE.

Finally, the ALJ noted Plaintiff's "conservative treatment and "normal examination findings" did not support the FCE's severe limitations. (Tr. 18). Plaintiff argues that his "conservative treatment does absolutely nothing to detract from the reliability of the FCE results or Dr. Dhyanchand's opinion regarding [Plaintiff's] limitations." (Doc. 13, at 12). However, the Sixth Circuit has relied upon a claimant's conservative treatment record to discount allegations of disability or to discount a medical opinion. *See Kepke v. Comm'r of Soc. Sec.*, 636 F. App'x 625, 631 (6th Cir. 2016) ("The ALJ noted that the records indicate Kepke received only conservative treatment for her ailments, a fact which constitutes a 'good reason' for discounting a treating source opinion"); *Lester v. Comm'r of Soc. Sec.*, 596 F. App'x 387, 389 (6th Cir. 2015) (finding ALJ reasonably discounted a doctor's proposed limitations because, among other things, the claimant

---

4. Moreover, even if Plaintiff is correct and this is not a well-supported reason to discount the opinion, it was not the only reason given. The remaining reasons, taken as a whole, would still constitute the "good reasons" necessary for discounting the opinion.

was receiving conservative treatment); *Francis*, 414 F. App'x at 806 ("the ALJ reasonably viewed Francis's limited treatment as inconsistent with Dr. Wakham's opinion"); *see also* 20 C.F.R. § 1527(c)(2)(ii) ("We will look at the treatment the source has provided . . . ."). At his evaluation with Dr. Bagheri, Plaintiff was reportedly "happy" to treat his back pain with anti-inflammatories and physical therapy (which had helped in the past). (Tr. 1321). As the ALJ pointed out, this was consistent with prior chiropractic records that indicated Plaintiff had been helped by physical therapy and with treatment, would be capable of employment despite his back pain. (Tr. 18) (citing Tr. 984).

Plaintiff also argues the FCE's conclusions are supported by "the fact that the Plaintiff needs to consider surgery to correct his back issues." (Doc. 13, at 12) (citing Tr. 1321); *see also* Doc. 13, at 11 ("[A]fter one examination with Dr. Ali Bagheri's [sic], he noted that the Plaintiff should consider surgical options for his back pain. Specifically, a spinal fusion to correct his back issues."). This is an overstatement of what Dr. Bagheri stated. Rather than recommending surgery, Dr. Bagheri mentions it as a conditional possibility if Plaintiff's condition were to worsen:

> At this point Mr. Miller would like to move forward with physical therapy, which is reasonable. We will get him set up for physical therapy, specifically for water therapy.
>
> With respect to his symptoms, should they worsen in nature, surgical options could be considered; however, he would have to quit smoking in order to pursue surgical intervention given that he would need a fusion. In any event, he is happy moving forward with anti-inflammatories, in addition to physical therapy. I will see him back in three to four months for repeat evaluation. He is happy with this plan moving forward.

(Tr. 1321). This statement by Dr. Bagheri does not support Plaintiff's argument that he was more limited by his back pain than the ALJ found. Thus, the ALJ had substantial evidence in the record to support his conclusion that Plaintiff was not more limited.

18

For the foregoing reasons, the undersigned concludes that even if the FCE was entitled to treating physician deference due to Dr. Dhyanchand's signature, the ALJ provided the required good reasons for discounting that opinion. *See Brock*, 368 F. App'x at 625; *Nelson*, 195 F. App'x at 472; *Henke*, 498 F. App'x at 640, n.3 (7th Cir. 2012). The reasons are "sufficiently specific to make clear to any subsequent reviewer the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Rogers*, 486 F.3d at 242 (quoting SSR 96-2p, 1996 WL 374188, at *4). The opinion found Plaintiff primarily limited due to low back pain. *See* Tr. 1324. The ALJ cited inconsistencies regarding the severity of that back pain in her decision to give the opinion little weight. The fact that Plaintiff can point to evidence to support the contention that he was more limited than the ALJ found does not change this analysis. Even if substantial evidence or indeed a preponderance of the evidence supports a claimant's position, the Court cannot overturn "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones*, 336 F.3d at 477. Finding that it does, the undersigned recommends the Commissioner's decision be affirmed.

## CONCLUSION

Following review of the arguments presented, the record, and applicable law, the Court finds the ALJ's decision is supported by substantial evidence. Therefore, the undersigned recommends the Commissioner's decision denying benefits be affirmed.

s/James R. Knepp II
United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of service of this notice. Failure to file objections within the specified time

WAIVES the right to appeal the Magistrate Judge's recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).